

**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

May 31, 2024

**VIA ELECTRONIC FILING**

Patricia Dodszuweit, Clerk
United States Court of Appeals
United States Courthouse, 21st Floor
601 Market Street
Philadelphia, PA  19106

    Re:    United States v. DeAndre Jackson/ Quintel Martins
              Nos. 23-1707 / 23-1802

Dear Ms. Dodszuweit:

    The government's five-page response to the Court's order dated May 6, 2024, is attached.

              Respectfully,

              JACQUELINE C. ROMERO
              United States Attorney


              */s Robert A. Zauzmer*
              ROBERT A. ZAUZMER
              Assistant United States Attorney
              Chief of Appeals

              */s Kevin Jayne*
              KEVIN JAYNE
              Assistant United States Attorney

/s Sandra M. Urban
SANDRA M. URBAN
Special Assistant United States Attorney

cc: Susan M. Lin, Esq.
    Todd Fiore, Esq.

## **Response to Court Order of May 6, 2024**

The Court directed the parties to submit supplemental letter briefs addressing the following:

1. If the Court were to hold that the stop or the frisk in this case were impermissibly intrusive and violative of the Fourth Amendment, must the Court remand to the District Court to determine, in the first instance, what evidence constitutes fruits of the unconstitutional conduct? If the Court must remand, may the District Court reopen the record?

2. Did the Government forfeit the argument that an exception to suppression applies when it failed to raise that issue in this appeal?

3. If the Court were to remand for further proceedings regarding the independent source doctrine, inevitable discovery exception, or any other exception to suppression, should the District Court be permitted to reopen the record?

At the outset, it is critical to reassert the government's position, that was fully briefed and argued, that the stop and frisk were appropriate and necessary to protect officer safety in the circumstances that existed.[1] For that reason, the judgment should be affirmed.

It is further critical to emphasize that *the defendants in the district court did not challenge the propriety of the frisk.* Further, the defense did not challenge the initial propriety of a *Terry* stop. The defendants argued instead that

---

[1] At oral argument on appeal, Jackson stated that the officer's *subjective* belief was that Officer McCauley did not believe that these individuals were armed and dangerous. Under this Court's binding precedent, the question is whether the officer's concern was "*objectively*" reasonable on the articulable facts. *See, e.g., United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000). But even if the officer's subjective belief was somehow relevant—viewing the record in a light most favorable to the government—the complete record shows Officer McCauley was "[c]oncerned about the behavior of the car before [he] stopped it[,]"; he believed the investigation involved a "serious crime"; and he did "not know[] what [was] inside the vehicle [that] could be dangerous." App. 199, 288. It was that belief, but most importantly the *objective* facts (probable cause car operating on roads illegally + car may have been stolen + multiple acts of evasion + car suddenly stopped at the dead-end of a dirt road next at 2:00 a.m. in high-crime area) that led this eleven-year veteran to stop the car in the manner he did, which addressed the safety of the officers.

the stop developed into a de facto arrest not based on probable cause, never focusing on the initial stop or the frisk.

Specifically, in his motion before the district court ahead of the suppression hearing, defendant Martins argued that (1) law enforcement's actions constituted a *de facto* arrest without probable cause; and (2) law enforcement lacked probable cause to search the trunk of the car. App. 48-53. Similarly, in his motion before the district court ahead of the suppression hearing, defendant Jackson argued that (1) law enforcement's stop "constituted a de facto arrest" without probable cause; (2) law enforcement's stop was "prolonged"; (3) law enforcement conducted the search "without a warrant, without probable cause, and was beyond the scope of any search-incident-to-arrest"; (4) Jackson had standing to challenge the search of the car; and (5) law enforcement lacked reasonable suspicion that evidence of misdemeanor gun possession would be found in the trunk of the car. App. 55-56, 61-67, 89-94.

The government responded in opposition and addressed all of these assertions, arguing that the search began with a reasonable *Terry* stop, leading to a search based on probable cause, under the automobile exception, based on information learned during the stop. The government added that, alternatively, evidence in the car would have been inevitably discovered during an inventory search. App. 68-88.

At the suppression hearing, before evidence was presented, the defense reiterated the same positions stated in the pleadings. App. 190-94. Again, the defendants did not raise the argument that law enforcement lacked reasonable suspicion to initiate the stop or perform a *Terry* frisk on the defendants.[2] The same was true at the concluding oral argument at the hearing. App. 339-58. Only on appeal, for the first time, did Jackson argue that an officer's safety frisk of him was not supported by reasonable suspicion, Jackson Br. 28-30, and this issue was addressed at oral argument before this Court.

While responding to that new argument, the government added that regardless of the propriety of the frisk, the search of the car was appropriate under the automobile exception, based not only on the discovery of a firearm but

---

[2] Jackson stated at the suppression hearing's opening argument that Officer McCauley "had no reason to believe that the individuals were armed or dangerous," App. 193, and Martins stated during oral argument that one of his arguments was whether "there is a reason that they are armed and dangerous," App. 344. But the defendants did so in the context of arguing why the law enforcement's actions constituted a *de facto* arrest—not in the context of arguing that the *Terry* frisk itself was improper.

also the odor of marijuana. The government asserted that the automobile exception was applicable (1) at the 3:00 minute mark, during the lawful pat-down of Jackson when the gun magazine was discovered, and (2) at the 3:15 minute mark when Deputy Baker smelled fresh marijuana emanating from the rear of the car. Gov't Br. 39-40.  Moreover, although not integrated into the argument section of the brief, the government described the evidence presented at the suppression hearing that an officer not involved in the frisk of Jackson, Officer Matthew O'Donnell, "testified that the fresh odor of marijuana was more potent towards the rear of the car"—which provides an independent basis in the record for applicability of the automobile exception. Br. 12, citing App. 305, 321.

While responding to the range of issues presented by the defendants on appeal, the government neglected to point out a conclusive fact about the specific argument raised for the first time by Jackson (Br. 28-30) about the propriety of the frisk: it is waived. "[R]aising an issue in the District Court is insufficient to preserve for appeal all arguments bearing on that issue. Instead, to preserve a suppression argument, a party must make the same argument in the District Court that he makes on appeal." *United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013).

Assuming that this Court nevertheless reaches the new frisk argument, and turning to the questions presented by the Court in the May 6 order, the government maintains (besides the fact that the frisk was warranted) that it would be unjust at this time to simply reverse based on the propriety of the frisk, where that issue was not raised at all in the district court and that court had no opportunity to address the ramifications of a ruling invalidating the frisk. (The result may be different if this Court were to find the *Terry* stop of the vehicle itself unwarranted, but again, the defense has never made that argument.) We therefore focus on the ramifications of reversal based on the propriety of the frisk. The defense, in its May 24, 2024, letter, does likewise. *See* letter at 2 ("These undisputed facts demonstrate that the evidence in the trunk and the cell phones was discovered as a result of the illegal frisk of Mr. Jackson.").

First, while the defense in its letter of May 24, 2024, sketches a chain of events that suggests that no evidence would have been located absent the frisk, the district court had no reason to assess that argument in the context of all available evidence (including, for instance, where and when the odor of marijuana was detected). This Court should not make such findings itself for the first time on a cold and incomplete record.

Second, the government has not forfeited any objection that follows if this Court reaches the argument that the defense has raised for the first time on appeal. As explained earlier, the government briefed to the district court that the

- 3 -

evidence in the car would have been inevitably discovered during an inventory search. App. 68-88 (Gov't Resp. Opp'n). However, the district court never addressed this argument in its decision denying the defendants' motions to suppress. App. 4-16. That issue remains unaddressed by the district court, and should be addressed in the first instance in the event of a remand. Second, the government briefed to the district court and this Court that the automobile exception and search-incident-to-arrest exceptions to the warrant requirement support the search of the trunk of the car, and that defendant Jackson had no standing to challenge the search of the truck. *See* App. 69, 83-88 (government filing in district court), and Gov't Br. 37-40.

The government did not brief the inevitable discovery issue in this Court, having developed no record on that issue in the district court given the defense arguments presented at the suppression hearing, and the absence of any findings by the district court. The government submits this Court in its discretion should not foreclose on remand an appropriate response to the defendants' new claim.

In the event the Court were to reverse based on the defendants' new argument regarding the frisk, the government has multiple theories that it wishes to pursue in opposition to suppression of evidence in this case. Depending on the exact basis for a reversal, this could include narrowly defining the fruits of the safety frisk, asserting Jackson had no standing to challenge the seizure of the contents of the trunk, and asserting alternative bases for denying suppression, *i.e.*, probable cause to search the trunk based on the smell of marijuana, and inevitable discovery.

In the event of reversal based on the propriety of the frisk, the Court should remand and allow the district court in the first instance to decide whether an alternative basis in the record already exists to deny suppression, or whether to reopen the record. A decision to reopen the record is "traditionally a discretionary matter for the district court." *United States v. Norman*, 465 F. App'x 110, 121 (3d Cir. 2012) (not precedential), citing *United States v. Coward*, 296 F.3d 176, 180 (3d Cir. 2002). In *Coward*, this Court found that the government neglected to introduce readily available evidence at a suppression hearing "out of a faulty interpretation of the law." *Coward*, 296 F.3d at 182. The parties agreed that the evidence offered at the hearing was insufficient to establish reasonable suspicion and that the burden to present evidence rested on the government. *Id.* at 180. The question before the Court was whether the evidence should be suppressed or the case remanded to allow the district court to decide whether the government should be given an opportunity to introduce new evidence on the issue of reasonable suspicion, focusing on the correctly applicable law. *Id.*

Expressing no view on the reasonableness of the government's explanation for its failure to present the appropriate evidence at the hearing, the Court concluded that it was appropriate to remand to the district court the determination of whether the government's explanation was reasonable and reopening the record was appropriate. *Id.* at 182. The Court observed that a primary focus should be on whether the party opposing the reopening would be prejudiced if reopening is permitted. *Id.* at 181.

As stated at oral argument, it may not be necessary to reopen the record depending on the nature and scope of this Court's ruling. But should it be necessary to reopen the record to advance one of the theories sketched above, in the wake of a ruling invalidating the frisk, it is difficult to imagine a case presenting a stronger showing of cause for reopening, where the new argument is a rebuttal to a new claim that the defendants did not raise in the district court, and that the district court was never called on to address. Despite the government raising the issues for the district court in some form or another, the district court did not address the government's automobile exception, search-incident-to-arrest, standing, or inevitable discovery arguments in its original decision. The parties simply were not given the opportunity to fully present the issues to the district court in relation to the new (and indeed waived) frisk claim. The district court should be given the opportunity to rule on them in the first instance, as a matter of discretion.

Moreover, in the event the district court does reopen the record, the defendants would not be prejudiced by the introduction of additional evidence. As the *Coward* Court explained, a "critical factor in evaluating prejudice is the timing of the motion to reopen," and if the request is made at a stage in the proceedings where the opposing party will have an opportunity to respond and attempt to rebut the evidence, it is not nearly as likely to be prejudicial as when reopening is granted after the opposing party will not have that opportunity. *Coward*, 296 F.3d at 181, citing *United States v. Blankenship*, 775 F.2d 735, 741 (6th Cir. 1985). In this case, the defendants will have a full chance to challenge or rebut any additional evidence at the hearing. Moreover, fairness dictates that the government should be able to develop at the district court any evidence related to the *Terry*-frisk issue, which is now raised for the first time on appeal. No prejudice would result.

For these reasons, as well as those previously briefed and argued, the judgment of the district court should be affirmed, given that the stop, frisk, and subsequent search were all valid. In the alternative, if this Court reverses any part of the district court's decision, it should remand for further proceedings addressing the consequence of that action, including whether suppression remains unwarranted based on any of the arguments described here.